UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL R WARD, | CASE NO. C25-1671-KKE |
| Plaintiff(s), | |
| v. | ORDER GRANTING MOTION TO COMPEL ARBITRATION |
| AMAZON.COM SERVICES LLC, | |
| Defendant(s). | |

Now before the Court are Plaintiff Michael R. Ward's motions for leave to file supplemental declarations (Dkt. Nos. 37, 39)[1] and Defendant Amazon.com Services LLC's ("Amazon") motion to compel arbitration (Dkt. No. 30). This case arises from Ward's former employment with Amazon. *See* Dkt. No. 1 at 2. Ward, who proceeds *pro se*, alleges disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA") and retaliation and interference under the Family and Medical Leave Act ("FMLA"). *See id.* at 5–6. Amazon now moves to compel arbitration of all of Ward's claims. Dkt. No. 30. For the reasons set forth below, the Court grants Amazon's motion to compel arbitration.

//

---

[1] Though Amazon filed a response to these motions, that response did not "oppose" Ward filing supplemental declarations—Amazon instead argued those filings further supported Amazon's motion to compel arbitration. Dkt. No. 40 ("Plaintiff's declarations support that he agreed to arbitrate."). As such, the Court grants Ward's motions for leave to file supplemental declarations. Dkt. Nos. 37, 39.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 1

## I.    BACKGROUND

On August 12, 2020, Plaintiff began work as a Software Development Engineer for Whole Foods Market ("Whole Foods") in Austin, Texas.  Dkt. No. 31 ¶ 8.  In 2021, Amazon began transitioning Whole Foods technology employees to Amazon; as part of that transition, certain Whole Foods employees, including Ward, were given the option of joining Amazon.  *Id.* ¶ 9.  Ward decided to transition to Amazon, and created a profile on Amazon's career site in July 2021.  *Id.* ¶ 10.  On August 17, 2021, Amazon provided employment-related documents to Plaintiff through his online portal for review and electronic signature.  *Id.*; *see also* Dkt. No. 35-16.  On August 19, 2021, Amazon Recruitment emailed Ward to remind him of "pending" documents "ready for review and signature."  Dkt. No. 35-15.  Those documents included the "Amazon TX Care Employee Injury Benefit Plan: Summary Plan Description," which contains the arbitration agreement at the center of this dispute ("Arbitration Agreement"), and a Confidentiality, Noncompetition, and Invention Assignment Agreement ("CNIAA").  *Id.* ¶¶ 11, 13; *see* Dkt. No. 31 at 12–40; Dkt. No. 35-21.

Ward was scheduled to begin work for Amazon on August 30, 2021.  Dkt. No. 31 at 46.  On September 2, 2021, Ward received a "ticket" from Amazon's Mandatory Documents Compliance ("MDC") team requesting Ward's signature "on the below noted document(s) no later than 2 September 2021 to remain in compliance with Amazon's policy."  Dkt. No. 35-17.  The list included only one document: "Confidentiality Agreement."  *Id.*  It additionally provided dates on which additional team members would be copied to the ticket, seemingly escalating the ticket:

> Hire Day 2 (Today): Your Hiring Manager, Skip Level Manager and Recruiter are copied on this ticket;
> Hire Day 4: Your Human Resources Director (HRD) will be added to this ticket;
> Hire Day 5: We will review your case with our Legal Team.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 2

*Id.* Ward signed both the Arbitration Agreement and the CNIAA the same day that he received the ticket.

The Arbitration Agreement provides that arbitration is "mandatory" for "Covered Claims." Dkt. No. 35-19 at 26. In relevant part, the Arbitration Agreement defines "Covered Claims," as:

> [A]ll Claims and causes of action arising under the federal and state employment laws. This includes, but is not limited to, claims under Title VII of the Civil Rights Act, the Fair Labor Standards Act, the Texas Commission on Human Rights Act, the Americans with Disability Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, as well as all common law claims, including those for discrimination, retaliation, harassment, tortious interference and wrongful discharge.

Dkt. No. 35-19 at 26. The Arbitration Agreement also delegates issues of arbitrability to an arbitrator, providing that "Any question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement." Dkt. No. 35-19 at 27.

The CNIAA, among other things, defines materials that constitute Amazon's confidential information and intellectual property, and sets forth steps that personnel must take to protect those materials. *See* Dkt. No. 35-21 ¶¶ 3.1–3.4, 5.1–5.5. It also provides multiple restrictive covenants, and includes parameters around non-competition, non-solicitation, and non-interference. *See id.* ¶¶ 4.1–4.3. The CNIAA additionally contains a general "governing law and jurisdiction" provision, which contains both choice-of-law and forum selection clauses. *Id.* ¶ 7.3. The choice-of-law provision states that the CNIAA "will be governed by and construed in accordance with the laws of the state in which Employee's employment with Employer was based at the time Employee signed this Agreement[.]" *Id.* The forum selection clause provides, in relevant part, that "Each party irrevocably consents to exclusive jurisdiction and venue in the state and federal courts located in King County, Washington with respect to any action, claim, or proceeding arising out of or in connection with this Agreement[.]" *Id.*

The parties do not dispute that on September 2, 2021, Ward electronically signed both the Arbitration Agreement and the CNIAA. Dkt. No. 31 at 40; Dkt. No. 35-19 at 29; Dkt. No. 35-21 at 1–5. Ward claims that the Amazon MDC team's "demand[]" that he "sign 10 documents by end-of-business or face 'Legal Team' referral for being 'out of compliance[]'" amounted to a "same-day ultimatum" and "economic duress"—and thus, was unconscionable. Dkt. No. 35 at 11.

## II.    ANALYSIS

### A.    Legal Standard

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any [appropriate] United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal courts must rigorously enforce parties' agreements to arbitrate. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–47 (2011). "Arbitration is a matter of contract and consent," and "disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

A party seeking to compel arbitration must "prov[e] the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T*, 563 U.S. at 351. Accordingly, when deciding whether the parties agreed to arbitrate a certain claim, courts "apply ordinary state-law principles that govern the formation

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 4

of contracts." *First Options of Chicago*, 514 U.S. at 944. Nonetheless, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements[.]" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). If a contract contains an arbitration clause, there is a presumption of arbitrability. *AT&T*, 475 U.S. at 650. "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

**B.      The CNIAA's Forum Selection Clause Does Not Conflict with the Arbitration Agreement.**

The parties executed two contracts relevant to this dispute: the Arbitration Agreement and the CNIAA. The Arbitration Agreement contained an arbitration provision which applies to "all" causes of action arising out of the ADA and the FMLA, as well as a delegation clause. The CNIAA—which pertains to safeguarding confidential information and intellectual property—contains a forum selection clause, which applies only to causes of action "arising out of or in connection with this Agreement." Dkt. No. 35-12 ¶ 7.3. Ward insists that the CNIAA's forum selection clause creates an "irreconcilable" conflict with the arbitration agreement such that the latter agreement is unenforceable. Dkt. No. 35 at 6–9. In support of his argument, Ward directs the Court to *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). *Id.*

In *Coinbase*, the parties had agreed to two contracts: one user agreement which mandated arbitration (including disputes about arbitrability) and a second contract designating California courts as the appropriate forum for disputes regarding a particular sweepstakes that users could enter for a chance to win cryptocurrency. 602 U.S. at 144–45. The *Coinbase* plaintiffs signed up for Coinbase accounts, and in doing so, signed the user agreement mandating arbitration. Subsequently, the *Coinbase* plaintiffs entered a Coinbase cryptocurrency sweepstakes, and in

doing so, agreed to a California court forum selection clause governing issues arising out of the sweepstakes. The Supreme Court observed that "[o]nce the sweepstakes concluded, the conflict between these contracts came to a head" when the plaintiffs "filed a class-action complaint[.]" *Id.* at 147. In response, the defendant moved to compel arbitration. *Id.* Thus, the Supreme Court had to determine "[w]hat happens if parties have multiple agreements that conflict as to … who decides arbitrability," and held that, "before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—*i.e.*, which contract controls." *Id.* at 145, 149.

Though Ward insists that analogous circumstances are present here, the Court is unconvinced. Unlike *Coinbase*, here, there is no conflict between the Arbitration Agreement—which includes ADA claims and FMLA claims—and the CNIAA—which covers only causes of action that pertain to confidentiality issues discussed therein. Had Ward's lawsuit brought claims covered by the terms of the CNIAA—such as disputes about inventions, confidential information, or intellectual property—his *Coinbase* argument might pass muster. But Ward's lawsuit only brings ADA and FMLA claims, which are expressly included in the scope of the Arbitration Agreement (and cannot reasonably be construed as falling within the scope of the CNIAA). *See* Dkt. No. 1. In other words, because the scope of the Arbitration Agreement is distinct from that of the CNIAA, there is no conflict between the agreements as there was in *Coinbase*. Accordingly, the Court finds *Coinbase* provides Ward no relief and will consider whether the Arbitration Agreement is valid.

## C.    Choice of Law

Before turning to the validity of the arbitration agreement, the Court must first determine what law governs the dispute. As noted above, courts generally apply state contract law when

interpreting arbitration agreements under the FAA. *See First Options of Chicago*, 514 U.S. at 944. While Ward argues that Washington state law should apply, Amazon applies Texas law.[2]

Determining the governing choice-of-law rules turns on the source of this Court's subject matter jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction." *Chan v. Soc'y Expeditions, Inc.,* 123 F.3d 1287, 1297 (9th Cir. 1997). In the Ninth Circuit, "[f]ederal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Under the Restatement, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied[.]" Restatement (Second) of Conflict of Laws § 187(1). This rule applies "unless either the chosen state has no substantial relationship to the parties or the transaction …, or application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]" *Id.* § 187(2)(a)–(b). "When the parties have made such a choice, they will usually refer expressly to the state of the chosen law in their contract[.]" *Id.* cmt. a. "[T]he fact that the contract contains legal expressions, or makes reference to legal doctrines, that are peculiar to the local law of a particular state may provide persuasive evidence that the parties wished to have this law applied." *Id.*

Amazon argues that Texas law should apply, as the Arbitration Agreement refers to Texas law. Dkt. No. 30 at 6 n.5. Ward acknowledges the Arbitration Agreement "references Texas law," but nevertheless resists Amazon's conclusion, lodging two arguments. Dkt. No. 35 at 10–11. First, Ward contends the CNIAA's forum selection clause supersedes the Arbitration Agreement.

---

[2] Amazon argues that "Even if Ninth Circuit and Washington law applied, the analysis and outcome would be no different," with respect to the validity of the arbitration agreement. Dkt. No. 30 at 6 n. 5.

Second, Ward argues that Washington law should govern because "Washington has the most significant relationship to this dispute." *Id.* at 10. For the reasons below, the Court will apply Texas law.

Ward's argument that the "Governing Law and Jurisdiction" provision of the CNIAA requires application of Washington law ignores the text of that agreement. As noted above, the CNIAA applies to disputes regarding confidential information, which are not at issue here. Moreover, even if the Court applied the CNIAA, it too calls for application of Texas law. Dkt. No. 35-21 at 4. Consistent with its title, the "Governing Law and Jurisdiction" paragraph includes two components: a choice-of-law provision and a venue provision. The choice-of-law provision states that the Agreement is "governed by and construed in accordance with the laws of the state in which Employee's employment with Employer was based at the time Employee signed this Agreement…" Dkt. No. 35-21 at 4. That state is Texas. By contrast, the venue provision merely identifies King County, Washington as the "jurisdiction and venue" for any dispute arising out the agreement. In other words, even if the CNIAA applied, which it does not, Texas substantive law would govern.

Ward's "significant relationship" argument fares no better. Under the Restatement, Ward would need to show Texas has "*no* substantial relationship to the parties or the transaction." Restatement (Second) of Conflict of Laws § 187(2) (emphasis added). Undisputed facts belie such a finding. Ward resides in Austin, Texas (Dkt. No. 1 at 2), and Ward's assigned work location has, since August 2020, been Austin, Texas (Dkt. No. 31 ¶ 8). Ward also acknowledges in his own declaration that "[a]t the time [he] signed [the Arbitration Agreement]" he was "employed by Amazon's Whole Foods Market subsidiary, which is headquartered in Austin, Texas." Dkt. No. 35-1 ¶ 45. Further, the U.S. Equal Employment Opportunity Commission's Notice of Right to Sue (Dkt. No. 1-3), which gave rise to this lawsuit, was issued by the EEOC's San Antonio, Texas

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 8

field office.  In contrast, the only connections this case has to Washington state are Amazon's headquarters in Washington and (according to Ward) the venue portion of the CNIAA's forum selection clause, which the Court has already determined does not apply to this lawsuit and does not, in any event, support the application of Washington law.  Finally, Ward identifies no reason why applying Texas law "would be contrary to a fundamental policy" of Washington, or that Washington "has a materially greater interest than [Texas]" in determining whether the Arbitration Agreement—which is between Ward, a *Texas* resident, and Amazon's Whole Foods Market subsidiary headquartered in *Texas*—is valid.  *See* Restatement (Second) of Conflict of Laws § 187(2)(b).

The Arbitration Agreement makes multiple references to Texas state law.  *See* Dkt. No. 31 at 37–40.  Indeed, the Arbitration Agreement states that arbitration is governed by the "Texas Rules of Civil Procedure"; that parties are entitled to allege claims or seek remedies that could be "assert[ed] in a Texas state or federal court"; that parties seeking an arbitration award may "file the award in an appropriate Texas state court"; and that standards for recusal of arbitrators are the same as those for judges "under Texas law." *Id.*  Thus, Texas law applies.  Restatement (Second) of Conflict of Laws § 187.

**D.      The Arbitration Agreement was Validly Formed.**

Under Texas law, a valid contract exists where there is: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App. 2002).  In the context of an arbitration agreement, Texas courts have explained that "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., LLP*, 196 S.W.3d 161, 162 (Tex.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 9

2006) (citations omitted); *see also* Dkt. No. 31 at 46 (Employment agreement specifying that Ward is an at-will employee).

In this case, Amazon sent the Arbitration Agreement to Ward's employee portal on August 17, 2021—approximately two weeks before he was scheduled to begin work. Dkt. No. 31 ¶ 10; *see also* Dkt. No. 35-16. On September 2, 2021, Amazon's MDC team followed up with Ward regarding his completion of the CNIAA. *See* Dkt. No. 35-17. The same day he received that email, Ward signed both the CNIAA and the "Mutual Agreement to Arbitrate." Dkt. No. 31 at 40. Ward's signature appeared on a new page which was titled, in all-caps and bold font: **RECEIPT AND ACKNOWLEDGEMENT OF SUMMARY PLAN DESCRIPTION AND MUTUAL AGREEMENT TO ARBITRATE**. *Id.* When Ward signed the agreement, he did so directly below a bolded statement with a header in all capital letters which stated:

> **MUTUAL AGREEMENT TO ARBITRATE. I understand that certain disputes between me and Amazon will be referred to mandatory binding arbitration rather than to a judge or jury. My signature below acknowledges receipt of and agreement to the Mutual Agreement to Arbitrate.**

*Id.* Thus, by signing the Arbitration Agreement, Ward acknowledged that he received and agreed to the contents of the agreement, and that he understood the meaning of the agreement—specifically, he agreed that "certain disputes" must be raised through arbitration "rather than" before a judge or jury. *Id.*

Ward argues that the Arbitration Agreement is unconscionable. *See* Dkt. No. 35 at 10–13. Ward's claim fails for two reasons.

First, many of his factual contentions, which form the basis for his arguments that the Arbitration Agreement is unconscionable, are contradicted by the record. For example, his claim that he was presented "a same-day ultimatum," is contradicted by emails showing Amazon provided the Arbitration Agreement to Ward more than two weeks before he signed it. Dkt. No.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 10

35-16. Further, the MDC team's September 2, 2021 email—which Ward argues amounted to "economic duress"—requested only that Ward sign the CNIAA, not the Arbitration Agreement. Dkt. No. 35-17. Also contrary to Ward's assertion, the MDC team provided Ward with a five-day timeline in which the team would eventually (not immediately) escalate that matter to the "Legal Team" for review. *Id.*

Second, none of Ward's arguments negate the fact that (1) he received notice of the Arbitration Agreement, and that (2) he affirmed his understanding and acceptance of the terms of the Agreement by signing the document. *See In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370, 375 (Tex. Ct. App. 2005). As Amazon points out, nowhere in Ward's opposition does he deny signing the Arbitration Agreement. Dkt. No. 38 at 3 ("the crucial fact here is that Plaintiff admits that he signed the Arbitration Agreement."). To the contrary, Ward acknowledges he signed both the CNIAA and the Arbitration Agreement. Dkt. No. 35 at 7. And, at bottom, "[i]t is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (citations omitted).

In sum, the Court finds the Arbitration Agreement was validly formed.

**E.      Ward's Challenges to the Arbitration Agreement Fall Within the Scope of the Enforceable Delegation Clause.**

"Where there is 'clear and unmistakable' evidence that the parties delegated threshold arbitrability questions in their agreement to an arbitrator, it is the arbitrator rather than the court that determines the scope of the agreement." *Showalter v. Apartment Mgmt. Consultants* LLC, 754 F. Supp. 3d 1074, 1079 (W.D. Wash. 2024) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). "Arbitrable threshold issues may include … whether the arbitration agreement is unconscionable." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190,

1199 (9th Cir. 2024) (citation modified). Where there is clear and unmistakable evidence that contracting parties agreed to delegate questions of arbitrability to an arbitrator, "the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (emphasis in original). The Ninth Circuit has explained that a party "resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).

In this case, the delegation clause in the Arbitration Agreement, which Ward signed, provides "clear and unmistakable evidence" that Ward and Amazon agreed to arbitrate arbitrability. *See Brennan*, 796 F.3d at 1132. Here, Ward attacks the delegation provision only by arguing that the CNIAA's forum selection clause supersedes the parties' Arbitration Agreement. The Court, however, has already rejected that argument. Crucially, Ward does not lodge unconscionability arguments that are particular to the delegation provision, and thus, fails to meet his burden to challenge the delegation clause. *See Bielski*, 87 F.4th at 1009. As such, "determining the presence (or absence) of procedural unconscionability is not properly before the Court and must be left to the arbitrator to decide." *Showalter*, 754 F. Supp. 3d at 1080 (citing *Brennan*, 796 F.3d at 1133).

**F.     Amazon Has Not Waived its Right to Enforce the Arbitration Agreement.**

Ward re-raises waiver arguments he previously made in his opposition to Amazon's motion to vacate default. Dkt. No. 35 at 13–19. "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Here, Ward fails to meet his heavy burden. As the Court previously explained,

in contrast to the employer in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), in this case, Amazon "contemporaneously with its appearance" "raised the arbitration defense in both its answer (Dkt. No. 12 at 8) and its motion to set aside default (Dkt. No. 16 at 6–7, 10)." Dkt. No. 28 at 5–6. Ward fails to identify any new authority that supports a waiver argument under these circumstances. As such, the Court again rejects Ward's waiver argument.

The Court is compelled to comment, however, on two erroneous citations that Ward advances in support of his waiver claim. First, Ward cited "Gile v. Dolgen Cal., LLC, 2023 WL 2669812, at *3 (9th Cir. 2023) (unpublished)" and characterized it as "finding waiver where defendant participated in joint scheduling without moving to compel." Dkt. No. 35 at 17. No such case with that citation appears to exist. The Court was able to locate *Gile v. Dolgen Cal., LLC*, 2022 WL 17248087 (9th Cir. 2022)—but that case does not support Ward's waiver claim. There, the Ninth Circuit found that a "motion to compel arbitration over eleven months after [Defendant] removed [the] case to federal court" amounted to waiver. 2022 WL 17248087, at *1. Such a timeline does not exist in this case. The court in *Gile* observed that the defendant "signed onto a joint Rule 26(f) report <u>before</u> filing its motion to compel," rather than "without" moving to compel as Ward asserts. *Id.* (emphasis added). In any case, *Gile* is inapposite because here, Amazon filed its motion to compel arbitration prior to filing the joint status report. *See* Dkt. Nos. 30, 33.

Next, and more troubling to the Court, Ward cited "Britton v. Co-op Banking Grp., 4 F.4th 742 (9th Cir. 2021)" as "finding waiver based on 77-day delay with discovery participation." Dkt. No. 35 at 18. The Court was again unable to locate a case with that citation. The Court identified, instead, *Britton v. Co-op Banking Grp.* ("*Briton I*"), 916 F.2d 1405 (9th Cir. 1990), which supports a contrary proposition. There, the Ninth Circuit held that there was *no* waiver of arbitration even when the demand for arbitration was made in a letter "a year after [plaintiffs] filed their complaint and six months before [defendant] moved the court to compel arbitration." *Britton*, 916 F.2d at

1413.  It is possible that Ward meant to cite a subsequent Ninth Circuit order: *Britton v. Co-op Banking Grp.* ("*Britton II*"), 4 F.3d 742 (9th Cir. 1993).  But that order, too, does not match the citation provided by Ward.  And crucially, nowhere in *Britton II* does the Ninth Circuit make a finding of "waiver based on [a] 77-day delay."  Dkt. No. 35 at 18.  Nor does *Britton II* even discuss waiver of arbitration.  *See* 4 F.3d 742, 748 (holding that a nonsignatory to contract containing an arbitration clause lacked standing to invoke the arbitration clause).

"Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court," and such conduct is sanctionable.  *United States v. Haynes*, 763 F. Supp. 3d 1054, 1067, 1071 (E.D. Cal. 2025), *reconsideration denied*, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025) (citation omitted).  The Court warns Ward that any further fictitious legal authority submitted to the Court may result in an order to show cause as to why sanctions should not issue.

## G.    The Court Need Not Hold an Evidentiary Hearing.

Lastly, Ward argues the Court should hold an evidentiary hearing under 9 U.S.C. § 4.  Dkt No. 35 at 19–26.  Ward argues that this case is analogous to *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).  The Court is unconvinced.  In *Hansen*, the plaintiff "declared under penalty of perjury that he never visited [defendant's] website, that he did not bind himself to the arbitration agreement by clicking the submit button, and that [plaintiff's deceased wife] told him before she passed away that although she may have visited [defendant's] website, 'she did not believe she had ever clicked a button[.]'"  1 F.4th at 670–71.  Such circumstances are not present in this case.  In contrast, here, Ward does not deny that he accessed and/or signed the Arbitration Agreement that is the subject of this dispute.  As such, the "making of the arbitration agreement," is not at issue as it was in *Hansen*, and the Court declines to hold an evidentiary hearing.

//

//

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motions for leave to file supplemental declarations (Dkt. Nos. 37, 39) and GRANTS Defendant's motion to compel arbitration. Dkt. No. 30.  Ward must initiate arbitration if he wishes to pursue his claims against Amazon. This case is STAYED pending the completion of arbitration proceedings. The parties are ORDERED to file a joint status report within 14 days of completing arbitration.

Dated this 3rd day of April, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 15